IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
WACO DIVISION

| | | |
|---|---|---|
| MILTON JOHNSON, | § | |
| | § | |
| Cross-Plaintiff, | § | |
| | § | |
| v. | § | 6:16-cv-284  RP |
| | § | |
| BRYAN F. RUSS, JR., | § | |
| | § | |
| Cross-Defendant. | § | |

## ORDER

Before the Court are Cross-Defendant Bryan Russ's Motion for a Protective Order (Dkt. 21), Cross-Plaintiff Milton Johnson's Motion to Compel and Response in Opposition to Motion for Protective Order (Dkt. 22), and Russ's Response to Plaintiff's Motion to Compel, (Dkt. 25). Based on its review of these filings, the relevant case law, and the record in this case, the Court issues the following Order.

### I. Background

This case arises out of allegations that officials for the City of Hearne ("the City") were misappropriating city funds. In response, Cross-Plaintiff Milton Johnson and several other residents of the City organized an initiative petition to require a forensic audit of the City's finances. Johnson alleges that he and the other residents gathered 517 signatures in total, 318 of which Johnson collected personally. The petition and signatures were submitted to the City on March 21, 2016.

According to Johnson, the city secretary normally forwards initiative petitions to the county elections administrator, who then verifies the signatures. In this case, however, Johnson alleges the petition was intercepted by Defendant Bryan Russ, the city attorney. According to Johnson, Russ initially declined to forward the petition to the county elections administrator, but rather kept it in his own possession in his private office.

1

On April 6, 2016, the City filed a declaratory judgment action in state court alleging that the proposed initiative—which would have allowed the Robertson County District Attorney to direct the audit and determine who would conduct it—improperly vested control of City business outside City officials and thus was not required to be placed on the ballot for vote. The City sought the following relief:

> (A) A judicial declaration that the proposed initiative extends beyond mere legislation and encroaches on the administrative duties of the Home Rule, City of Hearne;
> (B) A judicial declaration that there is no contractual or statutory authority for the Robertson County District Attorney to handle the business and affairs of the City of Hearne with respect to conducting audits;
> (C) A judicial declaration that the proposed initiative is prohibited by the terms of the City Charter wherein the initiative is an attempt to appropriate public funds.

(Pl.'s Pet. for Decl. J., Dkt. 1-2, at 4).

Johnson alleges that on April 7, 2016, the day after the suit was filed, Russ delivered the petition to the county elections administrator, but sent only the 318 signatures Johnson had collected—omitting 199 other signatures. Johnson further contends that on the following day, April 8, 2016, the county elections administrator hand-delivered a letter to Russ stating that there were only 318 signatures on the petition, an insufficient number to place the initiative on the ballot. Johnson alleges that Russ's failure to forward all of the petition signatures prevented the petition from being placed on the election ballot and that he did not learn that the petition would not be placed on the ballot until late April, when it was too late to correct. Finally, Johnson alleges that ordinarily petition organizers would have been informed of a deficiency regarding their petition, such as a lack of signatures, by the City of Hearne, but that, in this case, Russ intentionally concealed the deficiency to ensure that it would not be remedied and that the petition would not end up on the ballot.

Upon learning that he had not been informed of the deficiency in the petition, Johnson countersued the City, Russ, and the law firm where Russ serves as a partner, Palmos, Russ,

McCullough, & Russ, LLP. Johnson's counterclaim, filed on April 21, 2016, alleges violations of his First and Fourteenth Amendment rights under 42 U.S.C. § 1983. Russ and his firm removed the case to federal court on July 15, 2016. Soon thereafter, Johnson and the City settled their claims. On September 23, 2016, Russ and his firm filed a motion to dismiss Johnson's counter-claims. On January 10, 2017, acting on the recommendation of the Magistrate Judge, the Court denied the motion to dismiss with respect to Russ, but granted it with respect to his law firm. Accordingly, the only remaining claims in this litigation are those are asserted by Counter-Plaintiff Johnson and Counter-Defendant Russ.

After the parties began discovery, Russ filed a motion for a protective order on February 3, 2017. He argues that Johnson's second set of interrogatories "seek confidential communications made between representatives of the client, the City of Hearne, and the attorney, [Russ]," (Def.'s Opp. Mot. Protective Order, Dkt. 21, at ¶ 2), and answered three of the interrogatories subject to that objection. Johnson responded to Russ's motion and filed a motion to compel interrogatory responses on February 14, 2017. He argues that the interrogatories do not request privileged information because they ask about non-legal services, such as Russ's role in document delivery. Further, he argues that any information Russ contends is privileged falls within the crime-fraud exception to attorney-client privilege, and that some of Russ's answers were non-responsive. These two related discovery motions are presently before the Court.

## II. Standard of Review

In general, "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1). "[T]he court must limit the . . . extent of discovery . . . if it determines that . . . the proposed discovery is outside the scope permitted by Rule 26(b)(1)." Fed. R. Civ. P. 26(b)(2)(C)(iii).

3

"A party or any person from whom discovery is sought may move for a protective order." Fed. R. Civ. P. 26(c)(1). The court may grant the motion "for good cause . . . to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense, including . . . forbidding inquiry into certain matters, or limiting the scope of disclosure or discovery to certain matters." Fed. R. Civ. P. 26(c)(1)(D). "If a motion for a protective order is wholly or partly denied," however, "the court may . . . order that any party or person provide or permit discovery." Fed. R. Civ. P. 26(c)(2). In contrast, a party may move for an order to compel discovery if another "party fails to answer an interrogatory," or answers in "an evasive or incomplete" way. Fed. R. Civ. P. 37(a)(3)-(4).

### III. Discussion

The three issues before the Court are (1) whether Johnson's interrogatories seek to obtain privileged information, (2) if so, whether the crime-fraud exception applies, and (3) whether Russ's answers are otherwise non-responsive.

#### A. Attorney-Client Privilege

The attorney-client privilege exists to "encourage full and frank communication between attorneys and their clients and thereby promote broader public interests in the observance of law and administration of justice." *E.g., Upjohn Co. v. United States*, 449 U.S. 383, 389 (1981). This privilege "rests on the need for the advocate and counselor to know all that relates to the client's reasons for seeking representation if the professional mission is to be carried out." *Id.* (citing *Trammel v. United States* (1980)). While the attorney-client privilege extends to all situations in which counsel is sought on a legal matter, it protects "only those disclosures necessary to obtain informed legal advice which might not have been made absent the privilege." *Fisher v. United States*, 425 U.S. 391, 403 (1976). In other words, the communication must be made "in confidence for the purpose of obtaining legal advice from the lawyer" to fall within the scope of the privilege. *United States v. El*

4

*Paso Co.*, 682 F.2d 530, 538 (5th Cir. 1982). "Hence, the privilege does not protect documents and other communications simply because they result from an attorney-client relationship." *S.E.C. v. Microtune, Inc.*, 258 F.R.D. 310, 315 (N.D. Tex. 2009). "Moreover, courts generally construe the privilege narrowly because 'assertion of privileges inhibits the search for truth.'" *Id.* (citing *Navigant Consulting, Inc. v. Wilkinson*, 220 F.R.D. 467, 477 (N.D. Tex. 2004)).

"A party asserting a privilege exemption from discovery bears the burden of demonstrating its applicability." *In re Santa Fe Int'l Corp.*, 272 F.3d 705, 710 (5th Cir. 2001). "A general allegation of privilege is insufficient to meet this burden." *Navigant Consulting, Inc. v. Wilkinson*, 220 F.R.D. 467, 473 (N.D. Tex. 2004). Instead, "[t]he proponent must provide sufficient facts by way of detailed affidavits or other evidence to enable the court to determine whether the privilege exists." *Id.*

Russ argues that three of Johnson's interrogatories—Interrogatories No. 2, No. 4, and No. 6—"on their face, seek privileged communications." (Def's Mot. Protective Order, Dkt. 21, at 1). Because each interrogatory asks for different information, the Court will address them each separately.

Interrogatory No. 2 provides:

> **INTERROGATORY NO. 2:** For the period from March 1, 2016 through April 21, 2016, describe all communications related to your role in transferring petition signatures from the City of Hearne to the office of the Robertson County Elections Administrator. The term "describe" includes the persons involved in the communication, the means of communication (*e.g.,* telephone or email), the time and date of the communication, and the purpose and contents of any such communication. If, for example, you spoke with members of the city council regarding when or whether to transfer the signatures to the elections administrator, describe any such communications.

(Def.'s Resp. to Second Set of Interrogs., Dkt. 22-1, at 3-4). Russ argues that this question seeks communications between him and his client, the City, that "were made for the purpose of seeking legal advice." (*Id.*) But, as Johnson notes in his response, the question specifically asks for "all communications related to your role in transferring petition signatures," and transferring signatures

is not a legal service. (Pl.'s Mot. to Compel, Dkt. 22, at 1–2). Russ provides no explanation of how a question regarding communications about transferring signatures would encompass protected communications or how transferring signatures would be a legal service. And contrary to Russ's assertion Interrogatory No. 2 does not, on its face, seek privileged communications. The same question would logically be asked of the city secretary (the city employee who Johnson alleges normally transfers petition signatures) if she had been in control of the signatures rather than Russ; it is not obvious that such communications would be made for the purposes of providing legal advice. That Russ is an attorney does not automatically render the relevant communications protected. Further, although the Court can imagine ways in which Interrogatory No. 2 might encompass protected communications, for example, if the City Council asked Russ whether the transfer of the petition signatures to the county elections administrator was required by law, the Court cannot speculate that such communications exist and are the basis for the assertion of privilege. Instead, Russ has the burden to provide specific facts that support his assertion of privilege, and has failed to do so here.

Interrogatory No. 4 provides:

> **INTERROGATORY NO. 4:** Mr. Johnson's complaint alleges that Trudy Hancock delivered a letter to you stating that only 318 signatures could be verified, but you did not share this information with the Hearne City Council. Please explain why you did not share the letter or its contents with the city council members. If you contend that you did share the letter or its contents with council members, please describe how, when, where, and with whom you shared that information.

(Def.'s Resp. to Second Set of Interrogs., Dkt. 22-1, at 5). Russ again argues that this question seeks communications between him and his client, the City, that "were made for the purpose of seeking legal advice." (*Id.*). Johnson counters that the question does not seek privileged communications, and the Court agrees.

Interrogatory No. 4 encompasses two questions. First, it asks why Russ did not share the letter or its contents with the city council members. Second, it asks that if Russ did share the letter,

he describe "how, when, where, and with whom you shared that information." The first question does not ask about a communication with Russ's client, the City, thus does not fall within the attorney-client privilege. The second question does ask about a possible communication between Russ and the City, but it does not plainly ask for information encompassed by the attorney-client privilege.

Typically, the attorney-client privilege is discussed in terms of protecting communications from the client to the lawyer. For example, the Fifth Circuit has explained that "[t]he assertor of the lawyer-client privilege must prove: (1) that he made a confidential communication; (2) *to a lawyer* or his subordinate; (3) for the primary purpose of securing either a legal opinion or legal services, or assistance in some legal proceeding." *United States v. Robinson*, 121 F.3d 971, 974 (5th Cir. 1997) (emphasis added). While "courts all agree that some lawyer-to-client communications are protected," there is some dispute over how far the privilege extends. *Thurmond v. Compaq Computer Corp.*, 198 F.R.D. 475, 480 (E.D. Tex. 2000). Generally, however, "a derivative protection for communications *from* the *attorney* to the client" exists, but only "to the extent that the responsive attorney communications reveal the substance of protected communications from the client." 1 Paul R. Rice, et. al., Attorney-Client Privilege in the U.S. § 5:2 (2016); *see also Hodges, Grant & Kaufmann v. U.S. Gov't, Dep't of the Treasury, I.R.S.*, 768 F.2d 719, 720–21 (5th Cir. 1985) ("The [attorney-client] privilege also protects communications from the lawyer to his client, at least if they would tend to disclose the client's confidential communications."); *Wells v. Rushing*, 755 F.2d 376, 379 n.2 (5th Cir. 1985) ("[The attorney-client privilege] shields communications from the lawyer to the client only to the extent that these are based on, or may disclose, confidential information provided by the client or contain advice or opinions of the attorney."); *Thurmond*, 198 F.R.D. at 482 (concluding that "decisions of both the [Fifth Circuit] and this district court seem to favor at most protection only of

7

those lawyer-to-client communications that would tend to reveal or are based on confidential client communications").

Interrogatory No. 4 seeks information about a possible communication from an attorney, Russ, to his client, the City. Notably, the interrogatory does not ask for information about the contents of the communication, thus Russ's response is unlikely to reveal information or communications that came from the client. Instead, the interrogatory seeks information about when and how the attorney communicated information he obtained from a third party to the client. Such information is not protected by the attorney-client privilege.

Interrogatory No. 6 provides:

> **INTERROGATORY NO. 6:** Describe in detail all communications that you or your lawyers, agents, or representatives have had with law enforcement officials (prosecutors, criminal investigators, etc.) related to the subject matter of Milton Johnson's lawsuit against you. This request includes, but is not limited to: the name of any such law enforcement official(s); the agency or entity represented by the official(s); the time, date, and place of any such communication; the method of communication (email, telephone, etc.); and the contents of any such communication. If, for example, you were interviewed by an FBI agent or detective regarding the handling of the petition signatures, please describe any such communication in detail.

(Def.'s Resp. to Second Set of Interrogs., Dkt. 22-1, at 6). In Russ's motion for a protective order he asserts only the attorney-client privilege. However, is his response to Johnson's interrogatories, which Johnson, not Russ, provided to the Court, he instead asserts that "Interrogatory No. 6 asks about Defendant's attorney's work product." (*Id.*). The attorney-client privilege and the qualified privilege derived from the work-product doctrine are "distinct" protections. *United States v. Nobles*, 422 U.S. 225, 238 n.11 (1975); *see also Shields v. Sturm, Ruger & Co.*, 864 F.2d 379, 382 (5th Cir. 1989) ("The work product privilege is very different from the attorney-client privilege."). The Court will, however, consider the applicability of both privileges.

First, the attorney client-privilege does not protect communications between Russ or his lawyer and a third party—law enforcement officials. To the extent such communications reflected

8

privileged communications from Russ to his lawyer (or vice-versa), that privilege was waived when the communications were disclosed to a third party. *See Nguyen v. Excel Corp.*, 197 F.3d 200, 207 (5th Cir. 1999) ("When relayed to a third party that is not rendering legal services on the client's behalf, a communication is no longer confidential, and thus it falls outside of the reaches of the privilege.")

Second, while waiver does not apply to the work-product doctrine, *Shields v. Sturm, Ruger & Co.*, 864 F.2d 379, 382 (5th Cir. 1989) ("The work product privilege . . . does not exist to protect a confidential relationship but to promote the adversary system by safeguarding the fruits of an attorney's trial preparations from the discovery attempts of an opponent."), it is unclear how the work-product privilege could encompass all of the information at issue in Interrogatory No. 6. Work product typically constitutes "documents and tangible things that are prepared in anticipation of litigation or for trial by or for another party or its representative . . . including the other party's attorney." Fed. R. Civ. P. 26(b)(3). "[T]he work product doctrine insulates a lawyer's research, analysis of legal theories, mental impressions, notes, and memoranda of witnesses' statements from an opposing counsel's inquiries." *Dunn v. State Farm Fire & Cas. Co.*, 927 F.2d 869, 875 (5th Cir. 1991). Like the attorney-client privilege, "[t]he burden of establishing that a document is work product is on the party who asserts the claim." *Hodges, Grant & Kaufmann*, 768 F.2d at 721.

Interrogatory No. 6 asks for details about any communication between Russ, his attorneys, or his representatives with a law enforcement agency or official, and asks for the name of the official and his or her respective agency, "the time, date, and place of any such communication; the method of communication . . . and the contents of any such communication." (Def.'s Resp. to Second Set of Interrogs., Dkt. 22-1, at 6). It is unclear to the Court how information about when and how a communication with law enforcement took place could expose legal theories, mental impressions, or

9

notes. Instead, the only part of an answer to this interrogatory that might disclose work product would be the last part—the request for the contents of any communications with law enforcement.

With respect to Russ, there is no reason to believe his answers would encompass work-product. The interrogatory requests information regarding the "subject matter" of Johnson's lawsuit, i.e., facts surrounding Johnson's petition with the City of Hearne and Russ's alleged interference with the petition. To the extent Russ discussed what happened with law enforcement officials, he has provided no explanation for why those discussions would reflect work product. Instead, it is quite likely that they simply reflected Russ's memory of the events themselves, which is not protected. With respect to Russ's attorneys and representatives, however, the last part of Interrogatory No. 6 will almost inevitably encompass work product. Presumably, Russ's attorneys only know about the subject matter of Johnson's litigation through their representation of Russ—thus the information they know and what they communicated to law enforcement officials would necessarily reflect their own research and mental impressions of the case. Thus, to the extent Interrogatory No. 6 asks about the content of communications between Russ's attorneys or representatives and law enforcement officials, those communications are protected by the work-product privilege.

Based on the Court's review of each of the interrogatories at issue, the Court finds that Russ has only met his burden to demonstrate an applicable privilege with respect to a small portion of Interrogatory No. 6. With respect to the rest of Russ's answers, while it is possible that they might encompass some privileged communications, the Court agrees with Johnson that they are tailored to avoid privileged material, and that Russ has failed to meet his burden to demonstrate that they are not.

### B. Crime-Fraud Exception

Johnson suggests that to the extent the attorney-client privilege is applicable to Russ's interrogatory responses regarding communications between Russ and the City, the crime-fraud exception is applicable. The Court has determined that Russ has failed to demonstrate the applicability of the attorney-client privilege to his responses regarding his communications with the City, thus it need not consider the applicability of the crime-fraud exception.

### C. Responsiveness of Russ's Answers

Finally, Johnson argues that Russ's answers to Interrogatories No. 3 and No. 4 are not fully responsive. In Russ's response to Johnson's motion to compel, he agrees with respect to No. 3, and explains that he "will provide a supplemental response addressing recall petitions." With respect to No. 4, the Court agrees that Russ's answer is non-responsive; the interrogatory asks about whether Russ communicated the contents of Ms. Hancock's letter, while the answer relates to why the City challenged the petition. The Court will therefore order a full response to Interrogatory No. 4.

### IV. Conclusion

In light of the foregoing, the Court hereby **GRANTS** in part and **DENIES** in part Defendant Russ's Motion for Protective Order, (Dkt. 21), and **GRANTS** in part and **DENIES** in part Plaintiff Johnson's Motion to Compel, (Dkt. 22).

With respect to Johnson's Second Set of Interrogatories, Russ is hereby **ORDERED** to respond fully to Interrogatories No. 2 and 4, and to respond to Interrogatory No. 6 to the extent it asks about Russ's own communications with law enforcement regarding the subject matter of Johnson's suit or information about when and how his attorneys communicated with law enforcement regarding the subject matter of Johnson's suit.

It is further **ORDERED** that Russ's motion for a protective order is granted to the extent Johnson's discovery requests ask for the content of any communication between his attorneys or

representatives and a third party, including law enforcement, about the subject matter of Johnson's litigation.

    **SIGNED** on March 21, 2017.

                                    ROBERT PITMAN
                                    UNITED STATES DISTRICT JUDGE